Civil Action No. 20-CV-01977-PAB-KMT

## IN THE UNITED STATES COURT
## FOR THE DISTRICT OF COLORADO

DELBERT SGAGGIO,
Plaintiff,

v.

MILES DE YOUNG, CITY OF WOODLAND PARK, CITY OF WOODLAND PARK
EMPLOYEE JONN DOE, and, JOHN DOES 1-99,
Defendants.

**MOTION OF FIREARMS POLICY COALITION
FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*
IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO
THE MAGISTRATE JUDGE'S RECOMMENDATION**

Eugene Volokh
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
eugene.volokh@gmail.com

Matthew Larosiere
Firearms Policy Coalition
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 378-5785
mla@fpchq.org

*Counsel for* Amicus Curiae

## MOTION FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE*

Firearms Policy Coalition (FPC) seeks leave to file the attached brief as *amicus curiae* in support of plaintiff.

FPC is a nonprofit organization devoted to advancing individual liberty and defending constitutional rights, including both the First and the Second Amendments. FPC accomplishes its mission through legislative and grassroots advocacy, legal and historical research, litigation, education, and outreach programs.

FPC has a significant interest in the outcome of this case, as its members' speech (whether on firearms-related topics or otherwise)—much of which is done through social media—could be materially affected by the outcome of this case; and it also has extensive experience litigating First Amendment cases. It therefore does not merely repeat the arguments of the parties, but rather seeks to bring to bear that experience in a way that may assist this Court.

Counsel for FPC have reached out to the parties. Plaintiff has consented to the filing of this brief, and Defendant has not responded.

Respectfully submitted,

s/ Eugene Volokh
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
eugene.volokh@gmail.com
February 14, 2022

Civil Action No. 20-CV-01977-PAB-KMT

## IN THE UNITED STATES COURT
## FOR THE DISTRICT OF COLORADO

DELBERT SGAGGIO,
Plaintiff,

v.

MILES DE YOUNG, CITY OF WOODLAND PARK, CITY OF WOODLAND PARK
EMPLOYEE JONN DOE, and, JOHN DOES 1-99,
Defendants.

**PROPOSED BRIEF *AMICUS CURIAE* OF FIREARMS POLICY COALITION
IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO
THE MAGISTRATE JUDGE'S RECOMMENDATION**

Eugene Volokh
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
eugene.volokh@gmail.com

Matthew Larosiere
Firearms Policy Coalition
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 378-5785
mla@fpchq.org

*Counsel for* Amicus Curiae

**Argument**

The First Amendment analysis in the Magistrate Judge's Recommendation (ECF No. 24, at 8-14)—which was apparently drawn nearly verbatim from the Defendants' Motion for Summary Judgment (ECF No. 18, at 8-13) and Reply (ECF No. 22, at 6-8)—was in error, and should not be accepted. Indeed, this case well illustrates the Tenth Circuit's observation that a "'court's wholesale adoption of one party's proposed . . . conclusions of law provides little aid on appellate review'" (or, as here, on this Court's review of a Recommendation), "'particularly in the likely event that the adopted submission takes an adversarial stance.'" *Marcantel v. Michael & Sonja Saltman Family Trust*, 993 F.3d 1212, 1239 (10th Cir. 2021) (quoting *Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 829-30 (10th Cir. 2005)). Instead, the Defendants' Motion for Summary Judgment should be denied.

## I.   Government Censorship of Comments on Government Social Media Pages Presumptively Violates the First Amendment

"[T]he interactive component of [a government entity's] Facebook Page"—that is to say, the space for "comments by Facebook users"—"constitutes a public forum." *Davison v. Randall*, 912 F.3d 666, 674 (4th Cir. 2019). "A public official . . . cannot block opposing views from a personal Facebook page that is open to the public and discusses matters of public concern and then claim that the Facebook page does not have sufficient indicia of a public forum to be subject to the First Amendment," *Swanson v. Griffin*, 526 F. Supp. 3d 1005 (D.N.M. 2021), *appeal pending*; and what is true of public officials' personal pages is even more clearly true of public agencies' official pages.

1

This means that the government is sharply limited in its ability to restrict such public comments. *Davison*, 912 F.3d at 687; *Swanson*, 526 F. Supp. 3d at 1014. In particular, the First Amendment constrains the government's ability to delete particular comments posted by citizens, and not only the government's ability to ban a commenter for the future. *See Robinson v. Hunt Cty.*, 921 F.3d 440, 447 (5th Cir. 2019) (reversing dismissal of claims stemming from, in part, the deletion of comments from a government Facebook page).

## II.   Plaintiff's Comments Were Not Obscene

The First Amendment does not protect "obscenity." But none of plaintiff's comments qualified as "obscenity" in the constitutional sense. "Whatever else may be necessary to give rise to the States' broader power to prohibit obscene expression, such expression must be, in some way, erotic." *Cohen v. California*, 403 U.S. 15, 20 (1971).

This is so even when children may be present, notwithstanding any "governmental interest" in "protect[ing] the young": even under a "test of obscenity as to minors," "to be obscene 'such expression must be, in some significant way, erotic.'" *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213-14 & n.10 (1975) ((quoting *Cohen*)). "Our cases have been clear that the obscenity exception to the First Amendment does not cover whatever a legislature finds shocking, but only depictions of 'sexual conduct.'" *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 792-93 (2011) (striking down speech restriction aimed at shielding minors from supposedly harmful material, applying strict scrutiny). And in any event, the government cannot "reduce the adult population . . . to viewing only what is fit for children." *Denver Ar-*

*ea Educ. Telcoms. Consortium v. FCC*, 518 U.S. 727, 807 (1996) (cleaned up) (quoting *Butler v. Michigan*, 352 U.S. 380 (1957)).

Even in *FCC v. Pacifica Foundation*, which upheld restrictions on non-erotic use of "indecent" vulgarities in the limited context of over-the-air broadcast radio and television, the regulable language was limited to words depicting "sexual and excretory activities in a patently offense manner." 438 U.S. 726, 729, 751 (1978) (lead opinion) (upholding FCC restrictions on broadcasting words such as "shit," "piss," and "fuck"). And the Court has expressly held that this slightly broader latitude for restriction of over-the-air broadcasting does not extend to other media, including the internet. *Reno v. ACLU*, 521 U.S. 844, 870 (1997).

Plaintiff's speech had nothing to do with anything erotic, or for that matter with sexual or excretory activities. It involved sharp, even insulting criticism of government officials ("dirty ass cop," "pig," "terrorist," "punk ass," and "bitch"). That speech is no more obscene than the "Fuck the Draft" jacket that the Court held to be constitutionally protected in *Cohen*—and indeed is less vulgar than that jacket.

## III. Plaintiff's Has the Same First Amendment Rights as the Institutional Press

Plaintiff's rights to speak are protected by the Free Speech Clause, with no need for extra protection from the Free Press Clause; in modern cases, both Clauses have been seen as providing essentially equal protection against content-based speech restrictions. *See, e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 266, 268 (1964) (discussing "freedom of speech" alongside freedom of the press, and treating the nonmedia defendants in that case the same as the media defendants).

But if this Court views the Free Press Clause as relevant, then it should protect Plaintiff as much as it would the local newspaper. "The liberty of the press is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets. . . . The press in its historical connotation comprehends every sort of publication which affords a vehicle of information and opinion." *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938). Indeed, the Supreme Court has "consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers." *Citizens United v. FEC*, 558 U.S. 310, 352 (2010) (cleaned up).

> First amendment protection should not depend on whether the criticism is in the form of speech by a private individual or publication by the institutional press. Indeed, the law should encourage the private individual to become involved in and express his or her views on the conduct of government affairs. Arguably, vigorous debate at the local level is vastly more important in shaping an individual's ideas and opinions as to proper government conduct than is what that individual reads or hears from the national media. The bulk of government is conducted on the level where matters of public concern are decided by personal, individual exchanges. . . . To withhold the protections of the first amendment from nonmedia participants in the political process would be to stand the amendment on its head without the slightest justification.

*Garcia v. Bd. of Educ.*, 777 F.2d 1403, 1410 (10th Cir. 1985).

## IV. The Restriction on Plaintiff's Speech Was Not Just Content-Based but Viewpoint-Based

It is possible that comments sections in Facebook pages could be treated not as designated public fora (in which no content-based restrictions, except as to narrow exceptions such as obscenity, are allowed) but as limited public fora (in which reasonable and viewpoint-neutral restrictions are also allowed). *Davison*, 912 F.3d at 687. But in either case, the First Amendment forbids "the State to exercise viewpoint discrimination," even in a "limited public forum" "of its own creation." *Rosen-*

4

*berger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *Davidson*, 912 F.3d at 687. Viewpoint discrimination appears to be precisely what happened here: Defendants cannot point to any reasonable, viewpoint-neutral restriction that covers Plaintiff's speech, because what makes Plaintiff's speech especially offensive is precisely its viewpoint.

This is particularly clear as to the references to police as "terrorists" or "pigs." On its own, the word "pig" refers to a source of livelihood for many Americans, and of delicious meals for many more. When applied to police officers, though, "pig" conveys the viewpoint that either the particular officers, or the police generally, deserve contempt. It is that viewpoint that distinguishes an offensive use of the term from a perfectly proper one.

Similarly, while the Report and Recommendation states that "it is inaccurate to refer to the police as 'terrorists,'" ECF No. 24, at 12, the question is not one of factual accuracy; Plaintiff was not claiming that the police were literally terrorists or had committed crimes that American law labels as terrorism. Rather, he was expressing a viewpoint: that police officers' actions were improper uses of power. *Cf. Greenbelt Coop. Pub. Ass'n, Inc. v. Bresler*, 398 U.S. 6, 14 (1970) (concluding that, in context, the reference to someone as having engaged in "blackmail" would be seen as "no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the plaintiff's] negotiating position extremely unreasonable"). The government may disagree with that viewpoint, and may find it immoral or scandalous or otherwise offensive. But that is a viewpoint-based reason for restricting the speech. *See Iancu*

*v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (striking down a law barring the registration of "immoral or scandalous" trademarks, on the grounds that the law was viewpoint-based).

This is also true of the reference to "bitch." To the extent that the word "bitch" is viewed as offensive, it is largely because of the condemnatory viewpoint that it expresses (that the target is weak, contemptible, or otherwise unpleasant), because of an implicit message that women are weak, contemptible, or otherwise unpleasant, or both. Those viewpoints, however offensive, may not be suppressed either. *See Matal v. Tam*, 137 S. Ct. 1744, 1763-65 (2017) (lead opinion) (concluding that restrictions on words that "disparage" groups is viewpoint-based); *id.* at 1765-69 (Kennedy, J., concurring) (likewise). And in any event, Defendants point to no viewpoint-neutral policy that forbids that word, nor to any indication that Plaintiff's speech would have been restricted simply because of the use of this word absent the sharp criticism of police officers.

As to the word "ass," it was used here as what linguists call an "intensifier." *See* Giri Nathan, *Curious-Ass Scholars Look Into "-Ass" as a Modifier*, Deadspin, June 6, 2016, https://deadspin.com/curious-ass-scholars-look-into-ass-as-a-modifier-1780416654 ("An intensifier that renders its adjective friend that much pungent or that much more emphatic, '-ass' offers an option superior to the staid 'very' or limp 'really.'"). It is at most mildly vulgar: For instance, "badass" is seen as polite enough to appear in the *New York Times*—in the *Times*' own voice, not just in a quote, *see, e.g.*, Sam Sifton, *Angie Mar Is a Badass*, N.Y. Times, Jan. 10, 2018. "Dumbass" is

6

publicly said by Senators, including Utah Senator Orrin Hatch and Nebraska Senator Ben Sasse, who are not known for vulgarity. Peter Suderman, *The G.O.P. Accidentally Replaced Obamacare Without Repealing It*, N.Y. Times, Mar. 12, 2018 ("Senator Orrin Hatch of Utah recently called [Obamacare] the 'stupidest dumbass bill that I've ever seen.'"); Steve Inskeep, *Ben Sasse Rips Trump for Stoking Mob, Calls Josh Hawley's Objection 'Really Dumbass'*, NPR, Jan. 8, 2021.

But again there is no indication that Defendants categorically forbid all uses of "-ass" in this sense, without regard to viewpoint. If there were such a categorical prohibition, this Court could determine whether it was reasonable, and whether the forum here was a limited public forum or a designated public forum. But Defendants do not appear to have instituted any such viewpoint-neutral rule.

## Conclusion

Plaintiff's speech was protected by the First Amendment against Defendants' viewpoint-based exclusion. It was not "obscene," whether said by a member of the institutional press or otherwise. Defendant's motion for summary judgment should therefore be denied.

Respectfully submitted,

s/ Eugene Volokh
Counsel for Proposed *Amicus Curiae*

February 14, 2022

7

## Certificate of Service

I hereby certify that on February 14, 2022, I electronically filed the foregoing Motion with supporting Proposed Brief *Amicus Curiae* with the Clerk of the U.S. District Court of the District of Colorado by using the CM/ECF system, which will provide electronic notice and service for all counsel of record.


By: s/ Eugene Volokh
Counsel for Proposed *Amicus Curiae*

8