Civil Action No. 20-CV-01977-PAB-KMT

# IN THE UNITED STATES COURT
# FOR THE DISTRICT OF COLORADO

DELBERT SGAGGIO,
Plaintiff,

v.

MILES DE YOUNG, CITY OF WOODLAND PARK, CITY OF WOODLAND PARK EMPLOYEE JONN DOE, and, JOHN DOES 1-99,
Defendants.

**REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION [ECF 29] TO
MOTION OF FIREARMS POLICY COALITION
FOR LEAVE TO FILE BRIEF *AMICUS CURIAE*
IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO
THE MAGISTRATE JUDGE'S RECOMMENDATION [ECF 27]**

Eugene Volokh
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
eugene.volokh@gmail.com

Matthew Larosiere
Firearms Policy Coalition
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 378-5785
mla@fpchq.org

*Counsel for* Amicus Curiae

**Reply**

**I. Proposed *Amicus* Tried to Reach Defendants' Counsel at the E-Mail Address Listed in Her Colorado Bar Record**

Counsel for *amicus* attempted to contact defense counsel about the then-forthcoming motion for leave to file an *amicus* brief. While many lawyers include e-mail addresses in their signature blocks when filing notices of appearance, or on their firm websites, Ms. Kloster apparently did neither. Larosiere Dec. ¶ 4, 6 (in the Appendix to this Reply). Counsel therefore found the e-mail address that Ms. Kloster had on file with the Colorado Bar Association,[1] and e-mailed her at that address. Larosiere Dec. ¶ 8, 9. Counsel had no reason to think that Ms. Kloster's bar profile, which matched her full name, linked to her law firm's website, and otherwise appeared current, would contain an e-mail address Ms. Kloster does not use.

Perhaps, on reflection, counsel for *amicus* should have also tried to reach Ms. Kloster some other way as well—but in any event, that would likely not have changed the result: It appears, from the defendants' opposition, that defendants would have in any event refused to consent to *amicus*'s motion for leave to file the brief. The Court should thus decide *amicus*'s motion based on what makes sense to the sound administration of justice in this case, regardless of whether *amicus* counsel should have tried a second means of reaching Ms. Kloster.

---

[1] *See* http://www.cobar.org/cv/cgi-bin/memberdll.dll/info?wrp=FAL_Customer_Profile.htm&customercd=256945#, giving e-mail address as mkloster@nbdmlaw.com.

1

## II. *Amicus*'s Proposed Brief Seems Likely to Be Useful to This Court

*Amicus* agrees that this Court has discretion to decide whether to accept an *amicus* brief, based on whether this Court views the brief as useful. *Cf. Center for Biological Diversity v. Jewell*, No. 16-cv-01932-MSK-STV, 2017 U.S. Dist. LEXIS 215881, *8, *10, 2017 WL 4334071 (D. Colo. May 16, 2017) (rejecting proposed *amicus* brief in part because its arguments were "not relevant" or at least "not particularly relevant" to the matter before the court); *Endrew F. v. Douglas Cty. Sch. Dist. RE 1*, No. 12-cv-02620-LTB, 2017 U.S. Dist. LEXIS 189776, *5 (D. Colo. Nov. 16, 2017) (likewise focusing on whether the proposed *amicus* brief "provide[s] any additional information that is useful or helpful to the Court"). *Amicus* believes the brief would indeed be useful here.

As then-Judge Alito noted, "an amicus brief may be particularly helpful when the party supported is unrepresented or inadequately represented," *Neonatology Assocs., PA v. Commissioner*, 293 F.3d 128, 132 (3d Cir. 2002). "An amicus brief should normally be allowed when a party is not represented competently or is not represented at all . . . ." *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J.). "The participation of amicus curiae is desirable if a party does not have an attorney or is not adequately represented . . . ." *Center for Biological Diversity*, 2017 U.S. Dist. LEXIS 215881, *10. This is the very situation present here. Unsurprisingly, the analysis in the proposed *amicus* brief is consider-

2

ably more detailed than Mr. Sgaggio's own *pro se* analysis in his objection, and relies on many precedents beyond the ones that Mr. Sgaggio's analysis cites.

To be sure, Mr. Sgaggio's objection (at 11-13) does literally quote two blog posts written by Eugene Volokh, counsel for *amicus*. But this court would presumably find it useful to read the arguments as elaborated in a carefully drafted and cite-checked brief, rather than as quoted from a quickly written blog post. And in any event, if the question is close, "it is preferable to err on the side of granting leave." *Neonatology Assocs.*, 293 F.3d at 133.

Of course, the *amicus* brief takes a position, and that position supports the plaintiff, because *amicus* believes settled law supports the plaintiff. But that is not a basis for rejecting an *amicus* brief. While an *amicus* should not advocate for a party in the sense of being a hired lawyer for the party, the *amicus* would naturally often come to a result that supports a party. There is no requirement that an *amicus* "be 'impartial'" or "'disinterested.'" *Id.* at 131.

### III. *Amicus* Cares About Free Speech Rights as Well as About Firearms Policy

*Amicus* supports not just firearms rights but also free speech rights—because free speech is "the matrix, the indispensable condition, of nearly every other form of freedom." *Palko v. Connecticut*, 302 U.S. 319, 326-27 (1937). And because speech restrictions tend to breed broader restrictions, *amicus* seeks to protect people who speak about topics beyond just firearms. *See Cohen v. California*, 403 U.S. 15, 25 (1971) (condemning speech restrictions that are based on "principle[s]" that "seem[]

3

inherently boundless," because accepting those restrictions would justify other restrictions as well); *cf. McBrayer v. Governors Ridge Office Park Ass'n, Inc.*, 860 S.E.2d 58, 63 & n.5 (Ga. Ct. App. 2021) (noting that the Firearms Policy Coalition, together with the Georgia First Amendment Foundation, filed an amicus brief arguing against imposing nuisance liability on an abortion clinic—a brief that focused on how "a holding [against the abortion clinic] could be used to expose a broad array of legal businesses and institutions to nuisance liability").

Nor does *amicus* care solely about the rights of Californians; as with many other civil rights groups, it seeks to protect the civil rights of all Americans. And that is especially so because precedents set in federal district courts in one circuit are often influential in other circuits as well.

But in any event, *amicus*'s decisions about which causes to champion—and where to champion them—do not much bear on the key question in this case: Is the *amicus* brief likely to be useful to this Court in its decisionmaking? *Amicus* believes the answer is yes.

## Conclusion

For these reasons, *amicus* asks this Court to accept its *amicus* brief, and give it whatever weight this Court believes the reasoning merits.

Respectfully submitted,

s/ Eugene Volokh
Counsel for Proposed *Amicus Curiae*

February 24, 2022

4

**Certificate of Service**

I hereby certify that on February 24, 2022, I electronically filed the foregoing Motion with supporting Proposed Brief *Amicus Curiae* with the Clerk of the U.S. District Court of the District of Colorado by using the CM/ECF system, which will provide electronic notice and service for all counsel of record.

By: s/ Eugene Volokh
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
eugene.volokh@gmail.com
Counsel for Proposed *Amicus Curiae*

Civil Action No. 20-CV-01977-PAB-KMT

**IN THE UNITED STATES COURT
FOR THE DISTRICT OF COLORADO**

DELBERT SGAGGIO,
Plaintiff,

v.

MILES DE YOUNG, CITY OF WOODLAND PARK, CITY OF WOODLAND PARK
EMPLOYEE JONN DOE, and, JOHN DOES 1-99,
Defendants.

**Appendix: Declaration of Matthew Larosiere**

1. I am Matthew Larosiere, an Attorney with Firearms Policy Coalition (FPC).

2. On February 2, 2022, I became aware of the instant controversy and, upon discussion with my colleagues, began drafting our proposed brief.

3. On February 3, 2022, I sought to reach out to counsel for defendants in this case.

4. I began my efforts by looking to the notices of appearance filed by defense counsel on PACER, and did not see defense counsel's emails in their signature lines.

5. After retrieving defense counsel Marni Nathan Kloster's name and law firm, I went to her page on the NDM law firm website, at the address https://ndm-law.com/attorneys/marni-nathan-kloster/.

6. When I arrived at Ms. Kloster's page, clicked the "E-Mail Me" link below her profile image. This took me to a "contact form," which did not provide her e-mail address.

7. I chose not to use the "contact form," as I felt I had no way of knowing where the message would go, and no proof that I had sent it. I continued searching for her direct email.

8. I searched for Ms. Kloster's page on the Colorado Bar, and found a profile which matched her full name, firm, and provided a direct e-mail address of "mkloster@nbdmlaw.com."

9. Feeling confident that Ms. Kloster would have correct contact information on file with the bar of the state she practices, I contacted her, using the e-mail on file with the Colorado bar, respectfully requesting her consent to the filing of our proposed brief, on February 3, 2022. I received no response to this e-mail (neither a response from a person nor an error message).

s/ Matthew Larosiere
Matthew Larosiere
Firearms Policy Coalition
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 378-5785
mla@fpchq.org

February 23, 2022