IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-01977-PAB-NYW

DELBERT SGAGGIO,

     Plaintiff,

v.

MILES DE YOUNG,
CITY OF WOODLAND PARK,
CITY OF WOODLAND PARK EMPLOYEE JOHN DOE, and
JOHN DOES 1–99,

     Defendants.

---

## ORDER

---

This matter is before the Court on the Recommendation of United States Magistrate Judge [Docket No. 24] and the Motion of Firearms Policy Coalition for Leave to File Brief *Amicus Curiae* in Support of Plaintiff's Objections to the Magistrate Judge's Recommendation [Docket No. 27]. The recommendation addresses the motion for summary judgment filed by defendants Miles De Young ("Chief De Young") and the City of Woodland Park (the "City") (collectively, "defendants"). Plaintiff objected to the recommendation, Docket No. 26, and defendants responded. Docket No. 30. Defendants responded to the *amicus* motion, Docket No. 29, and proposed *amicus* replied. Docket No. 31.

## I. BACKGROUND[1]

The City's Police Department (the "Police Department") executed a warrant to search a residence, which residence was unrelated to plaintiff, for the unlawful possession of marijuana.  Docket No. 24 at 2, ¶ 1.  On or about July 19, 2018, the Police Department posted about the execution of the warrant on its public Facebook page ("Police Post").  *Id.*, ¶ 2.  That day, a Facebook user posted a video about the execution of the warrant with the caption "[d]ad tells a story of the house being raided for MMJ" ("Woodland Park Video").  *Id.*, ¶ 6.  In response to the Police Post, plaintiff posted on the Police Department's Facebook page a link to the Woodland Park Video with the caption "[y]ou target sick kids to get your overtime pay.. [sic]  That's why you are a pig."  *Id.* at 3, ¶ 8(a).  Plaintiff later commented, "[w]hy did you punk ass pigs remove my post.  This is a pubic [sic] forum.  I'm going to sue the chief of police, the city of Woodland Park, and whatever punk ass bitch remove my post.  Your actions are unconstitutional and violation of federal law 18 usc 241,242.. [sic]  see you pigs in Federal court.. [sic]," *id.*, ¶ 8(b); posted a link to the Woodland Park Video with the caption "[y]ou target sick children to Enrich [sic] officers [yellow police officer emoji] with overtime pay.. [sic] dirty ass cops," *id.*, ¶ 8(c); and commented, "Tyler Pope they violate the constitution daily.  All too stupid to understand the oath they took.  We the people will bring these terrorists into federal court."  *Id.*, ¶ 8(d).  Plaintiff's accusation that the

---

[1] Plaintiff did not object to the following facts, which the magistrate judge found undisputed.  *See* Docket No. 24 at 2–7; *see generally* Docket No. 26.  The Court has reviewed this non-objected to portion of the recommendation and finds no clear error.  *See* Fed. R. Civ. P. 72(b), Advisory Committee Notes.  The undisputed facts will not be repeated here except as necessary to resolve plaintiff's motion.

police were targeting sick kids was in reference to the execution of the warrant.  *Id.*, ¶ 9.

Plaintiff's posts on the Police Department's Facebook page violated the Police

Department's social media policy, and Chief De Young temporarily hid plaintiff's posts

from public view.  *Id.*, ¶¶ 11–12.  Plaintiff was restricted temporarily from posting on the

Police Department's Facebook page.  *Id.* at 4, ¶ 13.

     Plaintiff also posted the Woodland Park Video to the City's Facebook page with

the caption "[a]sk the city how they treat sick kids."  *Id.*, ¶ 10.  Plaintiff's post on the

City's Facebook page contained words that were filtered in accordance with the City's

Page Moderation Policy, and plaintiff alleges this post was removed.  *Id.*, ¶¶ 16–17.

Following the removal of his posts from the Facebook pages, plaintiff did not attempt to

republish the posts on any other Facebook page, although he had the option to do so,

or on another social media platform.  *Id.*, ¶¶ 19–20.

     Other people, including Kristopher Kaiser and Sherise Nipper, made posts

critical of the Police Department and City that were not removed.  *Id.*, ¶ 21.  Mr. Kaiser

posted, "[w]at [sic] was the probable cause that they had in excess of their allowed 12

plants?  What judge signed that warrant?"  *Id.* at 5, ¶ 22.  Ms. Nipper posted, "[a]s a

human being, this should make you feel terrible.  A man made law is causing epilepsy

patients to continue to have horrific seizures, even though we know cannabis heals

seizures" and called the actions of the Police Department "inhumane."  *Id.*, ¶ 23.

     Plaintiff brings four claims against defendants: (1) "First Amendment violation of

free speech" and viewpoint discrimination under 42 U.S.C. § 1983 against all

defendants,[2] (2) "First Amendment violation of free press" under 42 U.S.C. § 1983 against all defendants, (3) "Fourteenth Amendment violation of Equal Protections of the Law" under 42 U.S.C. § 1983 against Chief De Young and the City, and (4) "First Amendment – Retaliation for Free Speech/Expression" under 42 U.S.C. § 1983 against all defendants. Docket No. 1 at 29–33. Chief De Young and the City moved for summary judgment on all four claims and argues that Mr. De Young should be granted qualified immunity. *See generally* Docket No. 18. The magistrate judge recommends granting the motion and that Chief De Young be entitled to qualified immunity. Docket No. 24 at 18.

## II. LEGAL STANDARDS

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1059 (10th Cir. 1996). A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."). The Court therefore reviews the non-objected

---

[2] Plaintiff has not served defendants City of Woodland Park Employee John Doe or John Does 1–99.

to portions of the recommendation to confirm that there is "no clear error on the face of the record."  Fed. R. Civ. P. 72(b), Advisory Committee Notes.  This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review.  Fed. R. Civ. P. 72(b). Because plaintiff is proceeding *pro se*, the Court will construe his objections and pleadings liberally without serving as his advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment*. Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party.  *Id.* at 839–40.

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotation

5

omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## III.  ANALYSIS

### A.  *Amicus* Motion

The Firearms Policy Coalition ("FPC") seeks leave to file a proposed *amicus curiae* brief in support of plaintiff.  Docket No. 27 at 2.  As an initial matter, the Court notes that FPC has combined its motion and propose *amicus* brief as a single document.  *See generally id.*  The Local Rules, however, require that "[a] motion shall be filed as a separate document."  D.C.COLO.LCivR. 7.1(d).

"Historically, *amicus curiae* is an impartial individual who suggests the interpretation and status of the law, gives information concerning it, and advises the Court in order that justice may be done, rather than to advocate a point of view so that a cause may be won by one party or another."  *WildEarth Guardians v. Lane*, 2012 WL 10028647, at *2 (D.N.M. June 20, 2012) (quoting *Community Ass'n for Restoration of*

*Env't v. DeRuyter Bros. Dairy*, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999)).  "There is no precedent directly on point in the Tenth Circuit Court of Appeals[ ] . . . in deciding whether to allow or deny *amicus* participation.  Nor is there a pertinent rule of civil procedure" governing *amicus* participation in federal district courts.  *Id*.  The Court thus considers Federal Rule of Appellate Procedure 29, which governs *amicus* participation in appeals, for guidance.  *Ctr. for Biological Diversity v. Jewell*, No. 16-cv-01932-MSK-STV, 2017 WL 4334071, at *2 (D. Colo. May 16, 2017).  "Under Rule 29, a person or entity may participate as *amicus curiae* if it has an interest in the case, the matters it seeks to address are relevant, and its participation is desirable."  *Id.*, at *1.

Courts have broad discretion in determining whether to allow participation by *amicus curiae*.  *Id.*, at *1; *WildEarth Guardians*, 2012 WL 10028647, at *1 (collecting cases).  In determining whether to allow participation, courts "consider whether the *amicus* briefs provide 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'"  *WildEarth Guardians*, 2012 WL 10028647, at *2 (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997)); *see also Ass'n of Am. Sch. Paper Suppliers v. United States*, 683 F. Supp. 2d 1326, 1327 (Ct. Int'l Trade 2010) (citations omitted) (discussing other factors).  Courts often consider several factors:

> (1) whether the proposed *amicus* is a disinterested entity; (2) whether there is opposition to the entry of the *amicus*; (3) whether counsel is capable of making arguments without the assistance of an *amicus*; (4) the strength of the information and argument presented by the potential *amicus curiae*'s interests; and, perhaps most importantly (5) the usefulness of information and argument presented by the potential *amicus curiae* to the court.

*Medina v. Cath. Health Initiatives*, No. 13-cv-01249-REB-KLM, 2015 WL 13683647, at *1 (D. Colo. Oct. 7, 2015) (quoting *WildEarth Guardians*, 2012 WL 10028647 at *2). Moreover, "participation of *amicus curiae* is desirable if a party does not have an attorney or is not adequately represented . . . , or the *amicus curiae* can provide information or perspective that the parties are unable to." *Ctr. for Biological Diversity*, 2017 WL 4334071, at *4 (citing *Ryan*, 125 F.3d at 1063).

FPC provides no authority in its single-page motion. *See* Docket No. 27 at 2. FPC describes itself as a "nonprofit organization devoted to advancing individual liberty and defending constitutional rights, including both the First and the Second Amendments," which it does through "legislative and grassroots advocacy, legal and historical research, litigation, education, and outreach programs." *Id.* FPC also states that it has a "significant interest in the outcome of this case, as its members' speech (whether on firearms-related topics or otherwise) – much of which is done through social media – could be materially affected by the outcome of this case" and "has extensive experience litigating First Amendment cases." *Id.*

Defendants oppose FPC's motion. Docket No. 29. Defendants argue that (1) FPC failed to make reasonable efforts to confer before filing the motion as the Local Rules require, *id.* at 1; (2) FPC seeks to "act as an advocate of [p]laintiff, rather than a friend to the Court," *id.* at 2; (3) FPC does not have an interest in this case because it is focused on Second Amendment rights, not First and Fourteenth Amendment matters, *id.*; and (4) FPC's proposed brief is duplicative of plaintiff's objections. *Id.*

As to defendants' first argument, the Local Rules provide that, "[b]efore filing a

motion, counsel for the moving party or an unrepresented party shall confer or make reasonable, good faith efforts to confer with any opposing counsel or unrepresented party to resolve any disputed matter.  The moving party shall describe in the motion, or in a certificate attached to the motion, the specific efforts to fulfill this duty." D.C.COLO.LCivR 7.1(a).  By its terms, the Local Rule does not arguably apply to a would-be *amicus*, but even if it does, FPC explains that it made a reasonable attempt to reach counsel for defendants but was unable to do so.

Defendants argue that FPC seeks to act as plaintiff's advocate.  Docket No. 29 at 2.  FPC makes arguments and sides with plaintiff, but the Court does not find that FPC intends to act as plaintiff's advocate.  Although, historically, *amicus curiae* presented information without advocating a point of view, *see WildEarth Guardians*, 2012 WL 10028647, at *2, today *amicus* briefs often support a particular party. Moreover, plaintiff, who is proceeding *pro se*, is less "capable of making arguments without the assistance of an *amicus*," *see Medina*, 2015 WL 13683647, at *1, which counsels in favor of granting the motion, as the participation of an *amicus* "is desirable if a party does not have an attorney or is not adequately represented."  *Ctr. for Biological Diversity*, 2017 WL 4334071, at *4.

Defendants' third argument is that FPC is interested only in the Second Amendment, rather than the First and Fourteenth Amendments.  Docket No. 29 at 2. FPC, however, states that it is concerned with "advancing individual liberty and defending constitutional rights, including both the First and Second Amendments." Docket No. 27 at 2.  It states that its members' speech could be affected by the outcome of this case, *id.*, and, in reply, that it has filed *amicus* briefs on First

9

Amendment issues before.  *See* Docket No. 31 at 5.  Even though FPC is a California non-profit, it states that it seeks to "protect the civil rights of all Americans."  *Id.*  The Court agrees that FPC has a sufficient interest in the outcome of this case.

Fourth, defendants argue that FPC's proposed brief is duplicative of plaintiff's objections to the recommendation.  Docket No. 29 at 2.  Although plaintiff cites blog posts by Eugene Volokh, who filed the motion and proposed *amicus* brief on behalf of FPC, those blog posts are not as well developed as the proposed brief, and the Court finds that the proposed brief presents pertinent information and argument.  *See Medina*, 2015 WL 13683647, at *1.  This factor counsels in favor of granting the motion, as does the final factor, namely, the usefulness of information and argument, which is the most important.  *Id.*  Given plaintiff's *pro se* status, the Court finds that the proposed brief is useful to the Court, and the Court will grant the motion.

**B.  First Amendment Claims**

Plaintiff brings three claims against defendants under the First Amendment: (1) "First Amendment violation of free speech" and viewpoint discrimination, (2) "First Amendment violation of free press", and (3) "First Amendment – Retaliation for Free Speech/Expression."  Docket No. 1 at 29–33.  The magistrate judge recommends granting defendants' motion for summary judgment on each of these claims.  *See* Docket No. 24 at 8–17.

**1.  Free Speech Claim**

In his complaint, plaintiff asserts that defendants' decision to remove his posts and block him from "government controlled public forums is a content-based or

viewpoint-based restriction on speech, or both," in violation of his First Amendment rights. Docket No. 1 at 29.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I; *see also Brewer v. City of Albuquerque*, 18 F.4th 1205, 1217 (10th Cir. 2021); *iMatter Utah v. Njord*, 774 F.3d 1258, 1263 (10th Cir. 2014) ("At its core, 'the First Amendment reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" (quoting *Boos v. Barry*, 485 U.S. 312, 318 (1988))); *Pahls v. Thomas*, 718 F.3d 1210, 1229 (10th Cir. 2013) ("government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." (quoting *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972))). "By incorporation through the Fourteenth Amendment, this prohibition applies to states and their political subdivisions." *Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 979 (10th Cir. 2020).

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Swanson v. Griffin*, 2022 WL 570079, at *3 (10th Cir. Feb. 25, 2022) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995)). In traditional public forums, such as sidewalks and streets, a content-based regulation of speech must meet strict scrutiny, while a content-neutral regulation, by contrast, must meet intermediate scrutiny. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "Once [the government] has opened a limited forum, however, [it] must respect the lawful boundaries it has itself set. The [government] may not exclude speech where its distinction is not 'reasonable in light of

the purpose served by the forum.'"  *Rosenberger*, 515 U.S. at 829 (quoting *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 804–06 (1985)).

A content-based regulation is one that is "based upon either the content or the subject matter of the speech."  *Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 536 (1980); *see also Ward*, 491 U.S. at 791 (asking "whether the government has adopted a regulation of speech because of disagreement with the message it conveys").  A content-neutral regulation is one that is "justified without reference to the content of the regulated speech."  *Ward*, 491 U.S. at 791 (emphasis omitted) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)); *see Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 43 n.15 (10th Cir. 2013) ("A policy is content neutral if its restrictions do not hinge on either the viewpoint or the subject ma[tter] of the speech.").  In distinguishing between the two, "[t]he government's purpose is the controlling consideration."  *Ward*, 491 U.S. at 791.

"Viewpoint discrimination is a subset – and a particularly 'egregious form' – of content discrimination."  *Pahls*, 718 F.3d at 1229 (quoting *Rosenberger*, 515 U.S. at 829); *see also Taylor*, 713 F.3d at 43 n.15 ("Subject matter regulation is 'not as obnoxious as viewpoint-based regulation,' but either form of content regulation raises constitutional concerns." (quoting *Hill v. Colorado*, 530 U.S. 703, 723 (2000))); *see also Ognibene v. Parkes*, 671 F.3d 174, 192 (2d Cir. 2012) ("Viewpoint discrimination is a subset of content discrimination.").  Viewpoint discrimination occurs "[w]hen the government targets not subject matter, but particular views taken by speakers on a subject."  *Rosenberger*, 515 U.S. at 829.  "The government must abstain from

12

regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* "Both content- and viewpoint-based speech restrictions are presumptively invalid." *Pahls*, 718 F.3d at 1229 (citing *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009)); *Rosenberger*, 515 U.S. at 830–31; *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992).

The magistrate judge recommends granting defendants' motion for summary judgment because plaintiff used the "obscene" words "'pig,' 'terrorist,' 'ass,' and 'bitch' to refer to the police, and he baselessly and inaccurately accused the police of targeting sick children for personal profit." Docket No. 24 at 10. The magistrate judge explained that the evidence indicates that plaintiff's speech violated "policies . . . prohibiting the use of indecent and obscene language." *Id.* She also concluded that individuals who criticized the police with "non-obscene language" did not have their posts removed. *Id.*

Plaintiff objects to the magistrate judge's conclusion that his speech was obscene. Docket No. 26 at 2 ("Our forefathers would piss their damn grave [sic], if they knew a Magistrate [sic] in 2021 would consider, Pig [sic], terrorist, ass, and bitch to be obscene. In 1776 none of these words were obscene."). On de novo review, the Court agrees with plaintiff. "Obscene speech" is "sexually explicit material that violates fundamental notions of decency." *United States v. Williams*, 553 U.S. 285, 288 (2008); *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 792–93 (2011) ("Our cases have been clear that the obscenity exception to the First Amendment does not cover whatever a legislature finds shocking, but only depictions of 'sexual conduct.'" (quoting *Miller v. California*, 413 U.S. 15, 24 (1973)); *see also Roth v. United States*, 354 U.S. 476, 484–485 (1957). None of the words that plaintiff used in his posts were depictions of

sexual conduct.  Moreover, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."  *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).  "Speech is often provocative and challenging . . . .  [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."  *Id.* (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949)); *see also United States v. McKinney*, 9 F. App'x 887, 890 (10th Cir. 2001) (unpublished) (concluding under totality of the circumstances of encounter that the defendant's telling the officer to "go f*** [him]self" would not provoke the average person to retaliate).  Defendants made no argument that plaintiff's speech produced a "clear and present danger."  *See Houston*, 482 U.S. at 461.[3]

Plaintiff's posts were apparently removed pursuant to a Police Department or City policy prohibiting offensive or obscene speech on social media.  Docket No. 24 at 3, ¶¶ 11–12.  Such a policy is a content-based regulation because it is "based upon . . . the content . . . of [the] speech."  *See Consol. Edison*, 447 U.S. at 536; *Ward*, 491 U.S. at 791.  A content-based regulation must pass strict scrutiny – that is, it must be "justified by a compelling government interest and . . . narrowly drawn to serve that

_____

[3] Moreover, to the extent defendants argue in their motion that plaintiff's speech was indecent, rather than obscene, and thereby could be removed even if it did not depict sexual conduct, defendants provide no authority on the regulation of indecent but not obscene speech, and the Court declines to address the issue.  *See generally* Docket No. 18.  In response to plaintiff's objections, defendants rely on *R.A.V.* for the proposition that certain speech is afforded less constitutional protection.  *See* Docket No. 30 at 3–4.  However, *R.A.V.* concerned only "fighting words," *see R.A.V.*, 505 U.S. at 381 ("we accept the Minnesota Supreme Court's authoritative statement that the ordinance reaches only those expressions that constitute 'fighting words'"), and therefore is inapposite.

interest." *Brown*, 564 U.S. at 799 (citing *R.A.V.*, 505 U.S. at 395). "The State must specifically identify an 'actual problem' in need of solving," *id.* (citing *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 822–23 (2000)), "and the curtailment of free speech must be actually necessary to the solution." *Id.* (citing *R.A.V.*, 505 U.S. at 395). "That is a demanding standard." *Id.* "It is rare that a regulation restricting speech because of its content will ever be permissible." *Id.* (quoting *Playboy*, 529 U.S. at 818).

The magistrate judge concluded that defendants' restriction of plaintiff's speech "satisfie[d] strict scrutiny" because the restriction "served a compelling government interest," namely, "protect[ing] children from obscenity," and was "narrowly tailored" because others' posts were not removed. Docket No. 24 at 10–11. Plaintiff objects to the magistrate judge's conclusion. Docket No. 26 at 3–4. Plaintiff argues that others' posts were not deleted because they did not post the Woodland Park Video and, therefore, their "viewpoints are not the same." *Id.* at 4. The Court need not determine whether the restriction is viewpoint- or content-based because the restriction does not survive strict scrutiny in any event. Regardless of whether protecting children from profanity or offensive language is a compelling government interest, defendants have not shown that the policy – which was not produced or excerpted in defendants' summary judgment motion or in response to plaintiff's objection – is narrowly tailored to serve this interest. There is no indication which words the policy would delete or flag in a comment or post or why the non-obscene words plaintiff used are barred under the policies. Moreover, the undisputed facts indicate that plaintiff's post "[a]sk the city how they treat sick kids" was also removed, apparently pursuant to the social media policy. *See* Docket No. 18 at 4, ¶¶ 10–11; Docket No. 24 at 3, ¶¶ 10–12. Defendants have not

shown that they are entitled to summary judgment, and the Court therefore rejects this portion of the recommendation and sustains plaintiff's objection on his free speech claim.[4]

### 2. Free Press Claim

In his complaint, plaintiff asserts that defendants' removal of his "press publications" and blocking or banning plaintiff from their Facebook pages violates plaintiff's First Amendment free press rights.  Docket No. 1 at 30–31.

As FPC notes, "[t]he liberty of the press is not confined to newspapers and periodicals.  It necessarily embraces pamphlets and leaflets. . . .  The press in its historical connotation comprehends every sort of publication which affords a vehicle of information and opinion."  Docket No. 27 at 7 (quoting *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938)).  Moreover, the Court has "consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers." *Citizens United v. F.E.C.*, 558 U.S. 310, 352 (2010) (quoting *Austin v. Mich. Chamber of Com.*, 494 U.S. 652, 691 (1990) (Scalia, J., dissenting)).  "With the advent of the Internet and the decline of print and broadcast media, moreover, the line between the media and others who wish to comment on political and social issues becomes far more blurred."  *Id.*

The magistrate judge recommends granting defendants' summary judgment

_____

[4] Although the magistrate judge found convincing defendants' arguments that plaintiff's description of the Police Department was factually inaccurate because the search warrant was apparently valid, the Court declines to address this issue, and defendants provide no authority that factually inaccurate speech is afforded less constitutional protection.

motion and dismissing plaintiff's free press claim because "[p]laintiff did not make the Facebook posts in question as a member of the press."  Docket No. 24 at 13.  The magistrate judge noted that "[p]laintiff's only post on the City's website repeated . . . inaccurate statements," and plaintiff "lack[s] . . . journalistic experience and expertise," "did not perform any type of research that a journalist would perform and the posts do not reflect an editorial process," "did not contact any persons or organizations involved in the execution of the search warrant," "does not know what the proper execution of a search warrant is," and "does not have any degrees or professional certification or licensure related to journalism."  *Id.* at 13–14.  Plaintiff objects to the recommendation and argues that he is a reporter and has "done live broadcasts."  Docket No. 26 at 9.

On de novo review, the Court rejects the recommendation because the accuracy of plaintiff's posts is irrelevant, and First Amendment free press protection does not require journalistic experience and expertise, research, professional degrees, or licenses.  As FPC notes, the Tenth Circuit has explained that "First [A]mendment protection should not depend on whether the criticism is in the form of speech by a private individual or publication by the institutional press," and "[t]o withhold the protections of the first amendment from nonmedia participants in the political process would be to stand the amendment on its head without the slightest justification."  Docket No. 27 at 7 (quoting *Garcia v. Bd. of Educ. of Socorro Consol. Sch. Dist.*, 777 F.2d 1403, 1410 (10th Cir. 1985)); *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion.  Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized.")).

17

### 3. Retaliation Claim

Defendants seek summary judgment on plaintiff's First Amendment retaliation claim.  Docket No. 18 at 15–17.  To succeed on a First Amendment retaliation claim, plaintiff must show: (1) he "was engaged in constitutionally protected activity"; (2) defendants' "actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) defendants' "adverse action was substantially motivated as a response to [plaintiff's] exercise of constitutionally protected conduct."  *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

The magistrate judge recommends granting defendants' motion on this claim because, first, plaintiff's First Amendment claim fails and, second, plaintiff has "failed to allege the requisite chilling effect for a retaliation claim," as plaintiff's speech was not chilled, as he "continued to use various social media" and has filed numerous lawsuits against other public officials and entities that have removed his Facebook posts. Docket No. 24 at 15–17.

The Court has concluded that defendants are not entitled to summary judgment on plaintiff's First Amendment free speech claim, and, accordingly, the Court rejects the first basis of the magistrate judge's recommendation.  Plaintiff, however, did not object to the second basis of the magistrate judge's recommendation on this claim, namely, that he failed to establish a genuine dispute of material fact that whether his speech was chilled.  *See generally* Docket No. 26.  As a general matter, a party's failure to object to a recommendation waives review of both factual and legal questions.  *See, e.g.*, *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008); *Wirsching v. Colorado*, 360 F.3d 1191, 1197 (10th Cir. 2004).  In the absence of an objection, the district court

may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers*, 927 F.2d at 1167; *see also Thomas*, 474 U.S. at 150. The Court has reviewed the recommendation to satisfy itself that there is "no clear error on the face of the record," *see* Fed. R. Civ. P. 72(b), Advisory Committee Notes, and has concluded that the recommendation is a correct application of the facts and the law on this claim because plaintiff's speech was not chilled.

### C.  Fourteenth Amendment Claim

Plaintiff brings a Fourteenth Amendment claim for "violation of Equal Protections of the Law" and asserts that his race was a "motivating factor" in the decision to remove his Facebook posts. Docket No. 1 at 32. Defendants seek summary judgment on this claim. Docket No. 18 at 14–15. As the magistrate judge noted, "[t]he Equal Protection Clause of the Fourteenth Amendment mandates that no state 'deny any person within its jurisdiction the equal protection of the laws.'" Docket No. 24 at 15 (quoting *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1243 (10th Cir. 2000) (quoting U.S. Const. amend. XIV)). "Discrimination based on race and national origin violates equal protection." *Id.* (citing *Ramirez*, 222 F.3d at 1243). "A violation occurs when the defendants are shown to have been motivated by racial animus." *Id.* (citing *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989)).

The magistrate judge recommends dismissing this claim because plaintiff provided no "evidence that he was treated differently than similarly situated persons who are not of Asian descent" or that his "status as an Asian man played any part in his posts being hidden or on his ability to post on the City and Police Department's pages" because his posts "did not indicate his race or ethnic origin," and his Facebook profile

19

picture did not relate "to his race or national origin" or make Chief De Young aware of his race.  Docket No. 24 at 15.  Plaintiff does not object to this portion of the recommendation, *see generally* Docket No. 26, and the Court finds "no clear error on the face of the record," *see* Fed. R. Civ. P. 72(b), Advisory Committee Notes.  The Court will accept the recommendation and dismiss plaintiff's equal protection claim.

### D.  Qualified Immunity

Defendants argued in their motion that Chief De Young is entitled to qualified immunity on all claims.  Docket No. 18 at 17–19.  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To overcome a qualified immunity defense, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"  *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731,

735 (2011)).

The magistrate judge agreed with defendants because she concluded that plaintiff failed to establish that defendants violated his constitutional rights.  Docket No. 24 at 17–18.  The Court is unpersuaded.  As discussed previously, the Court has found that summary judgment is inappropriate on plaintiff's First Amendment claims.  The Court thus focuses on the second prong of the analysis, namely, whether plaintiff has shown that the right was clearly established at the time of its violation.  *See Quinn*, 780 F.3d at 1004.  Plaintiff insists that he has "stated plenty of [c]learly established law in this objection."  Docket No. 26 at 11.  "In order for a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Swanson*, 2022 WL 570079, at *2 (quoting *Quinn*, 780 F.3d at 1004–05).  To demonstrate a clearly established right, a plaintiff is required to show a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts."  *See Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).  This requires "more than 'a handful of decisions from courts in other circuits that lend support to his claim.'"  *Swanson*, 2022 WL 570079, at *2 (quoting *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009); *see also Routt v. Howry*, 835 F. App'x 379, 385 (10th Cir. 2020) (unpublished) ("[O]nly one case from another circuit . . . is insufficient to constitute the weight of authority from other circuits that is necessary to finding it clearly established that defendants' particular conduct violated [plaintiff's] rights."); *Parkhurst v. Lampert*, 339 F. App'x 855, 861 (10th Cir. 2009) (unpublished) ("a lone case from another circuit does not satisfy the 'weight of authority' standard").

21

"[T]he Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality,'" *Quinn*, 780 F.3d at 1005 (quoting *al-Kidd*, 563 U.S. at 742), but it has also explained that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  Nevertheless, "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "[P]laintiffs may not identify their claim through 'extremely abstract rights' because this would 'convert the rule of qualified immunity into a rule of virtually unqualified liability.'" *Swanson*, 2022 WL 570079, at *3 (quoting *White*, 137 S. Ct. at 552); *see also Anderson*, 483 U.S. at 639. Ultimately, the Court must assess whether "existing precedent [has] placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (quoting *Mullenix*, 577 U.S. at 12).

Plaintiff bears the burden of identifying clearly established law. *See Quinn*, 780 F.3d at 1004; *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010).  Neither plaintiff nor FPC, however, has identified Tenth Circuit or Supreme Court authority that is sufficiently particularized to the facts of this case. *White*, 137 S. Ct. at 552.  Plaintiff cites to a number of Supreme Court cases, but, because each of the cases that plaintiff cites was decided before the advent of social media, none is sufficiently similar or particularized to show clearly established law on the facts of this case. *See id.* Plaintiff's single-sentence objection does not meet his burden. *See* Docket No. 26 at 11 ("I have stated plenty of [c]learly established law in this objection.").

The relevant cases that FPC identifies are *Swanson v. Griffin*, 526 F. Supp. 3d 1005 (D.N.M. 2021), and *Robinson v. Hunt Cnty.*, 921 F.3d 440, 447 (5th Cir. 2019), and *Davison v. Randall*, 912 F.3d 666, 682 (4th Cir. 2019).  Again, none of these cases is from the Tenth Circuit or Supreme Court.  Moreover, on appeal, *Swanson*'s dissimilarity to this case is made apparent.  *Swanson* involved the issue of "when an individual government official's social media profile becomes a public forum," *Swanson*, 2022 WL 570079, at *3, while this case involves a government entity's social page. *See id.* at *4 ("But [*Robinson*] was in the context of a Facebook page maintained by and titled under the name of the Hunt County Sheriff's Office.  This fact makes *Robinson* entirely distinguishable from [*Swanson*] because the Hunt County Sheriff's Office, who created the social media forum, is a government entity rather than a private individual who also serves as a government official." (citation omitted)).

Without clear Tenth Circuit or Supreme Court authority, the court considers whether the clearly established weight of authority from other circuits would put every reasonable official on notice in mid-2018 that deleting comments and banning individuals from official Facebook pages violates the First Amendment.  *Davison* and *Robinson* are similar to this case.  In *Davison*, the defendant, a county supervisor, blocked the plaintiff from a Facebook page after the plaintiff posted a series of comments critical of the defendant.  912 F.3d at 675–76.  The court concluded that the defendant's Facebook page was a public forum based on when she created the page, how she labeled the page, and how she used the page.  *Id.* at 680–81.  The court thus held that the defendant violated the First Amendment because her actions amounted to

an effort "to suppress speech critical of [her] conduct of official duties or fitness for public office." *Id.* at 680. Similarly, in *Robinson*, the plaintiff asserted a First Amendment claim after being blocked from accessing and commenting on a Facebook page maintained by and titled under the name of the Hunt County Sheriff's Office. 921 F.3d at 445. The court held that "[o]fficial censorship based on a state actor's subjective judgment that the content or protected speech is offensive or inappropriate is viewpoint discrimination." *Id.* at 447. *Davison* and *Robinson* are similar to this case, but the Tenth Circuit has admonished that "two out-of-circuit decisions . . . would not amount to a sufficient body of out-of-circuit case law to satisfy the weight of authority approach." *See Swanson*, 2022 WL 570079, at *4 n.2. Moreover, neither *Davison* nor *Robinson* was decided before plaintiff's posts were removed, and in determining whether the law was clearly established, the Court examines the law as it was at the time of the defendant's actions. *See Harlow*, 457 U.S. at 818; *Wolfenbarger v. Williams*, 826 F.2d 930, 932–33 (10th Cir. 1987).

The Court may also conduct its own review of the law, particularly in cases involving *pro se* plaintiffs. *See Williams v. Hansen*, 5 F.4th 1129, 1133 (10th Cir. 2021) ("In determining whether a right is clearly established, we are conducting de novo review of a legal issue, which requires consideration of all relevant case law."); *Ali v. Duboise*, 763 F. App'x 645, 651–52 (10th Cir. 2019) (unpublished) (reversing dismissal of *pro se* plaintiff's claim, dismissed for failure to identify a case demonstrating plaintiff's right was clearly established, and identifying sufficiently similar Supreme Court case to find clearly established right). Along with *Davison* and *Robinson*, which FPC identified,

24

the Second Circuit held that President Trump "created a public forum" with his Twitter account because he "intentionally opened" the account "for public discussion" and "upon assuming office, repeatedly used the [a]ccount as an official vehicle for governance and made its interactive features accessible to the public without limitation." *See Knight First Amendment Inst. at Colum. Univ. v. Trump*, 928 F.3d 226, 237 (2d. Cir. 2019), *vacated as moot Biden v. Knight First Amendment Inst. at Colum. Univ.*, 141 S. Ct. 1220 (2021). *Knight*, however, was decided after plaintiff's posts were removed in this case and, therefore, cannot amount to clearly established law at the time of the violation. Other courts have reached different results, and several courts have found defendants entitled to qualified immunity because the law was not clearly established at the time of the violation. *See, e.g.*, *Lloyd v. City of Streetsboro*, 2018 WL 11298664, at *4–5 (6th Cir. Dec. 20, 2018) (unpublished) (holding that "it cannot be said that it was reasonably clear to [the defendant] that her alleged act of blocking [the plaintiff] from the City's Facebook page violated a clearly established constitutional right"); *Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 616, 625–26 (S.D.N.Y. 2020) ("Whether there is appellate-level precedent to support that broad proposition . . . it does not follow that 'particularized' persuasive authority exists to clearly establish the scope of First Amendment protections with respect to social media. Indeed, the stronger inference is that no federal appellate court had ruled in this area prior to [the defendant's] actions, since [the plaintiff] cites no such case, let alone one that 'place[s] the statutory or constitutional question beyond debate.'" (quoting *Taylor v. Barkes*, 575 U.S. 822, 825 (2015)), *aff'd*, 2021 WL 1568822 (2d Cir. Apr. 22, 2021); *One Wisc. Now v. Kremer*, 354 F. Supp. 3d 940, 951–53 (W.D. Wis. 2019) (finding state legislators acted under

color of law when blocking plaintiff from their official Twitter pages); *Garnier v. Poway Unified Sch. Dist.*, 2019 WL 4736208, at *5 (S.D. Cal. Sept. 26, 2019) (holding that school board members using campaign and official pages violated First Amendment rights, but the rights were not clearly established at the time); *Hyman v. Kirksey*, 2019 WL 2323864, at *2 (E.D. Ark. May 30, 2019) (holding that in police chief using police department's official page, "the governing law wasn't clear enough when [the violation took place] for [the police chief] to face a lawsuit for his actions" because "[t]he Supreme Court hasn't yet spoken on this First Amendment issue," and only "[t]wo U.S. Courts of Appeals have."); *Price v. City of N.Y.*, 2018 WL 3117507, at *2–4, 10 (S.D.N.Y. June 25, 2018) (concluding public employees violated the plaintiff's rights when they blocked her from official government Twitter accounts, yet stating only that the legal landscape "may . . . place the City on notice of the need to train its employees" with respect to potential First Amendment violations).  All but *Price* were decided after Chief De Young's actions in this case.  In the absence of "cases of controlling authority in [this] jurisdiction at the time of the incident or . . . a consensus of cases of persuasive authority," *al-Kidd*, 563 U.S. at 746 (citation and internal quotation marks omitted), it cannot be said that the "constitutional question [was] beyond debate," *see Taylor*, 575 U.S. at 825, and that it was reasonably clear to Chief De Young that his deleting plaintiff's Facebook posts and blocking plaintiff violated a clearly established constitutional right in June 2018.  Chief De Young, therefore, is entitled to qualified immunity, and the Court overrules plaintiff's objection on this claim.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Motion of Firearms Policy Coalition for Leave to File Brief *Amicus Curiae* in Support of Plaintiff's Objections to the Magistrate Judge's Recommendation [Docket No. 27] is **GRANTED**.  It is further

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 24] is **ACCEPTED in part** and **REJECTED in part**.  It is further

**ORDERED** that plaintiff's Objection to Recommendation of United States Magistrate Judge [Docket No. 26] is **SUSTAINED in part** and **OVERRULED in part**.  It is further

**ORDERED** that Defendants De Young and City's Motion for Summary Judgment [Docket No. 18] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that plaintiff's third claim, for a violation of the Fourteenth Amendment, and fourth claim, for First Amendment retaliation, are **DISMISSED with prejudice**.  It is further

**ORDERED** that all claims against defendant Miles De Young are **DISMISSED with prejudice**.

DATED March 31, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge